# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

JACOB A. LAMBERT, )
)
       Petitioner, )
)
vs. )   Case No.   15-0223-CV-W-BCW-P
)
MICHAEL BOWERSOX, )
)
       Respondent. )

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Jacob Lambert, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 23, 2015, seeking to challenge his 2011 conviction and sentence for robbery in the first degree, which was entered in the Circuit Court of Boone County, Missouri.

After consolidating petitioner's duplicative claims,[1] petitioner asserts eleven (11) grounds for relief: (1) that petitioner is actually innocent; (2) that the Information submitted was inadequate and, therefore, the trial court lacked jurisdiction; (3) that there was insufficient evidence to support a conviction; (4) that the prosecutor committed misconduct by submitting improper jury instructions to the trial court; (5) that the victim gave perjured testimony; (6) that the prosecutor improperly led the victim during testimony; (7) that the jury was improperly impaneled because it was all-white; (8) that trial counsel was ineffective for failing to obtain written statements from two jurors regarding their reasons for finding petitioner guilty; (9) that trial counsel was ineffective for failing to exclude the victim's testimony on competence grounds; (10) that trial counsel was ineffective for failing to call Jeremiah Brown, petitioner's co-defendant, as a witness; and (11) that

---
[1] Petitioner's complaint contains multiple sub-claims that are duplicative. The Court has consolidated such claims to concisely address petitioner's grounds for relief.

trial counsel was ineffective for failing to call the initial reporting officer as a witness. Respondent contends that Ground 1 does not state a cognizable claim for federal habeas relief, that Grounds 3, 4, and 10 are without merit, and that Grounds 2, 5, 6, 7, 8, 9, and 11 are procedurally barred.[2]

## FACTUAL BACKGROUND

On direct appeal, the Missouri Court of Appeals, Western District, summarized the facts of the case:

> [Mitchell] Niles [("Niles")] and Jennifer Hulen ("Hulen") were conversing in Niles's parked car at 2:00 a.m. on July 29, 2010, in the carport of the Gatehouse Apartments in Columbia, Missouri. A vehicle pulled into the carport next to the passenger side of Niles's car. Three black men wearing white T-shirts exited the vehicle, looked under its hood for a couple of minutes, and then shut the hood and left. Niles and Hulen continued talking.
>
> After a minute or two, Niles heard a tap on his driver's window. When he looked to see who was tapping, he saw a gun. The gunman, who was standing beside the rear driver's side door, put the gun in the window and ordered Niles to roll down the window. Niles complied. The gunman demanded, "Give me all your money." Niles replied that he didn't have any. The exchange occurred again. The man cocked his gun, stepped forward next to the driver's window, reached in, and struck Niles across the face with the gun. After striking Niles, the man said, "You know what this is. Give me your money." Niles reached in his back pocket, grabbed his wallet, and gave it to the man.
>
> The man was holding the gun on Niles when Niles handed him the wallet. Niles got a good look at the gunman: dark skin, skinny, dark brown eyes, thin facial structure, and a distinctive knobby nose. Although the man had pulled his shirt from the back over the top of his head to his forehead, Niles could see that the gunman had bangs that looked like dreadlocks.
>
> After Niles handed over his wallet, the gunman directed, "Get everything else." A second man opened Niles's passenger side front door, reached into the car, and took the car stereo, two cell phones, and Hulen's purse. Niles described the second man as shorter, darker, and with shorter hair. After taking the objects, the

---

[2] Respondent asserts multiple reasons to deny Grounds 1, 2, 4, 5, 6, 7, 8, 9, and 11. However, the Court will address these grounds in a way that is "easie[st] and thus more judicially efficient." See Jones v. Bowersox, 28 Fed. Appx. 610, 611 2002 WL 215523, **1 (8th Cir. Feb. 13, 2002).

men ran away. Niles ran after them but could not catch them. Meanwhile, Hulen went to her sister's Gatehouse apartment, and her sister called the police. The police responded to the scene.

Shortly after the robbery, Jeremiah Brown ("Brown") brought a car to a mechanic for engine work. Brown offered a cell phone to the mechanic in exchange for a reduction in the price of the work. The mechanic agreed. However, the cell phone charger Brown provided the mechanic did not work. The mechanic had a friend with the same type of cell phone take the phone home and charge it. The friend recognized a contact in the phone and speculated that the phone might be stolen. The next day, he returned the cell phone to the mechanic. That same day, Brown returned with Lambert to the mechanic's shop to pick up the car. A dispute arose between Brown and the mechanic over payment for work done on the car. Brown called the Boone County Sheriff's Department (yes, Brown was the one that called law enforcement) to settle the dispute. When the sheriff's deputy arrived, the mechanic gave her the cell phone and told her about his friend's suspicion that the cell phone might be stolen.

Subsequently, the sheriff's deputy contacted the Columbia police department detective assigned to investigate the Niles/Hulen robbery to inform him that she had recovered a cell phone in Brown's possession that she believed had been stolen in the Niles/Hulen case. After the sheriff's deputy delivered the cell phone, the police detective compiled a photo lineup with Brown's photograph as the suspect photograph and four "filler" photographs. The detective's partner informed the detective that Lambert was a close associate of Brown. The detective included Lambert's photograph as one of the "fillers" because he matched Brown's general characteristics and was Brown's friend.

After the photo lineup was prepared, the detective contacted Niles, told him that the police had developed a possible suspect, and asked Niles to come to the Columbia police department to view a photo lineup. Niles consented. At the photo lineup on October 27, 2010, Niles selected, without hesitation, the photographs of Brown and Lambert and identified them as the two men who robbed him on July 29. The detective wrote Niles's verbal identification on each photograph. On Brown's photograph, the detective wrote, "The guy who reached over the girl and took my head unit." On Lambert's photograph, the detective wrote, "The guy who put the gun in my face."

Lambert was charged with robbery in the first degree. Prior to trial, Lambert's counsel filed a motion to suppress any in-court identification and testimony regarding all out-of-court identifications by Niles. Lambert's counsel argued that the procedures used by the police in the photo lineup to identify Lambert were unduly suggestive and tainted the identification so that it was unreliable. The trial court denied the motion after an evidentiary hearing.

The only evidence at trial implicating Lambert in the robbery were Niles's

identifications. Over a continuing objection by Lambert's counsel, Niles testified that in the photo lineup he was shown by the detective, he was able to identify the two individuals who robbed him. Niles identified the photograph of Lambert that he had selected during the photo lineup as that of "the guy who pistol-whipped me" and the photograph was admitted into evidence. Niles also made an in-court identification of Lambert as the gunman who pistol-whipped and robbed him.

The detective testified at trial and identified Lambert's photograph and read for the jury Niles's response to the photograph, which the detective had written on the photograph after the viewing: "The guy who put the gun in my face."

The jury returned a guilty verdict, and the trial court sentenced Lambert to twelve years imprisonment.

Respondent's Exhibit F, pp. 2-5.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[3] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1 – FREESTANDING CLAIM OF ACTUAL INNOCENCE

In Ground 1, petitioner contends that he is actually innocent. A freestanding claim of actual innocence cannot, in itself, provide habeas relief. See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("This rule is grounded in the principle that federal habeas courts sit to ensure that

---

[3]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

individuals are not imprisoned in violation of the Constitution - not to correct errors of fact."). "Federal courts are not forums in which to relitigate state trials [or guilty pleas]," Barefoot v. Estelle, 463 U.S. 880, 887 (1983), and, therefore, petitioner must present an independent constitutional violation other than his innocence to be afforded habeas relief. Consequently, Ground 1 will be denied.

## GROUND 3 – INSUFFICIENCY OF EVIDENCE

In Ground 3, petitioner contends that he could not be convicted as an accomplice of a robbery if Brown, petitioner's co-defendant, had his first-degree robbery charges dropped. Brown eventually pleaded guilty to receiving stolen property. Petitioner contends that such is "evidence" and that petitioner's conviction is therefore supported by insufficient evidence.

A federal habeas court may not overturn a state court decision regarding a sufficiency of the evidence challenge simply because it disagrees with the state court; a federal court may only overturn the decision if it was "objectively unreasonable." Cavazos v. Smith, 132 S. Ct. 2, 3 (2011). The Missouri Court of Appeals, Western District, denied petitioner's claim as follows:

> . . . under Missouri law, the mere fact that Mr. Brown was not found guilty does not void Mr. Lambert's conviction although he was found guilty for being Mr. Brown's accomplice during the armed robbery. *See* § 562.046(1) RSMo 2000; *State v. Presley*, 694 S.W.2d 867, 871 (Mo. App. S.D. 1985) (finding sufficient evidence to sustain conviction although the codefendant "was not subject to prosecution for or was not guilty of the crime"). The motion court did not err in denying this claim.

Respondent's Exhibit M, pp. 5-6 (internal footnotes omitted).

The Missouri Court of Appeals' resolution of petitioner's claim was not based on an unreasonable determination of the facts or on a misapplication of federal constitutional law. See 28 U.S.C. 2254(d)(1) and (2); Jackson v. Virginia, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt"). "In applying this standard, '[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited . . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that conclusion.'" Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002) (citing Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994)), cert. denied, 537 U.S. 886 (2002).

Here, the Missouri Court of Appeals held that, under Missouri law, Lambert's conviction was not void simply because co-defendant Brown was not convicted of first-degree robbery. This Court defers to the Missouri Court of Appeals on the proper interpretation of state law. Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994) (habeas court not authorized to re-examine state court's determination of state law). Because the appellate court's ruling did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"[4] or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see U.S.C. § 2254(d)(1) and (2), Ground 3 will be denied.

## **GROUND 4 – PROSECUTORIAL MISCONDUCT**

In Ground 4, petitioner contends that the prosecutor committed misconduct as follows:

Denied and prejudice petitioner rights to equal protection, due process of law, impartial jury and a fair trial. As Follows:

Supporting Facts:
1st, the prosecutor of the State of Missouri submitted a verdict director for the jury

---

[4] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

>to find petitioner guilty, if they believe he assisted Mr. Jeremiah Brown's alleged conduct. The state knew that they never established in fact by conviction that Mr. Brown robbed J.H. of cellphone to even submit a verdict on accomplice liability, and one can believe that jurors were under the impression Mr. Brown was guilty or convicted of robbing J.H., of a cell for jurors to find petitioner guilty as Mr. Brown accomplice. The latter was proven that Mr. Brown was guilty of receiving stolen property not robbery, and his robbery charges were dismissed.

Doc. No. 1.

Granting petitioner's claim a liberal construction, the Court assumes that petitioner is attempting to claim that the prosecutor submitted improper jury instructions to the trial court which were ultimately the jury instructions chosen by the court and given to the jury. Such does not constitute prosecutorial misconduct. Petitioner's claim, if any, is that the trial court erred by submitting an improper verdict director to the jury.

A claim that the instructions given by the trial court were erroneous under state law does not allege a violation of federal constitutional rights and, therefore, does not support habeas relief. Engle v. Isaac 456 U.S. 107 (1982). Habeas relief is available only when a petitioner establishes that improper instructions resulted in a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Williams v. Lockhart, 736 F.2d 1264, 1267 (8th Cir. 1999); see also Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("Where a petitioner claims that an instruction confused the jury, federal law requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.") (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Petitioner avers that the "information was found to be deficient" but fails to provide any factual support. Doc. No. 1. As such, petitioner fails to establish a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the

rudimentary demands of fair procedure." Williams, 736 F.2d at 1267.

Ground 4 will be denied.

## **GROUND 10 – FAILURE TO CALL BROWN AS WITNESS**

In Ground 10, petitioner contends that his trial counsel was ineffective for not calling Brown as a witness. Specifically, he contends that if Brown would have testified, there is a reasonable probability that the result of the trial would have been different.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., id. at 687-90.

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The Missouri Court of Appeals, Western District, found that the motion court's judgment was supported by the record:

> To prove ineffective assistance of counsel, Mr. Lambert had to show that trial counsel's performance fell below the reasonably competent level and that he was thereby prejudiced. *See Hurst*, 301 S.W.3d at 116. We presume trial counsel's assistance was effective. *Id.* at 117. We find prejudice when a reasonable probability exists that the trial outcome would have been different but for trial counsel's deficient performance. *Id.*

> Mr. Lambert argues that trial counsel did not fulfill his duty to investigate Mr. Brown as a witness, and he was thereby prejudiced. To prove that trial counsel was ineffective for failing to investigate and interview a witness, a movant must show: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness' testimony would have produced a viable defense." *Hurst*, 301 S.W.3d at 117. We presume that trial counsel's failure to call a witness reflects trial strategy. *Id*.
>
> Here, trial counsel testified that he wanted to obtain a statement from Mr. Brown for trial. However, trial counsel also testified that Mr. Brown could not be located. Although Mr. Lambert stated he gave trial counsel additional contact information to find Mr. Brown, the motion court did not believe him. The motion court is "free to believe or disbelieve the testimony of any witness," and we defer to its credibility determinations. *Hurst*, 301 S.W.3d at 117. Moreover, the motion court did not believe Mr. Brown's deposition testimony that he would have testified. It declared Mr. Brown's testimony would not have provided a viable defense, based on the contents of the statements, Mr. Brown's extensive criminal history, and the evidence of Mr. Lambert's guilt. Consequently, the trial court did not clearly err in denying this claim. Therefore, Mr. Lambert's first point is denied.

Respondent's Exhibit M, pp. 3-4 (internal footnotes omitted).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The resolution of Ground 10 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 10 will be denied.

## **GROUNDS 2, 5, 6, 7, 8, 9, & 11 – PROCEDURAL DEFAULT**

In Ground 2, petitioner contends that the Information charging him with robbery was inadequate and, therefore, the trial court lacked jurisdiction. In Ground 5, petitioner contends that the victim committed perjury. In Ground 6, petitioner contends that there was improper leading during the victim's testimony. In Ground 7, petitioner contends that the jury was improperly impaneled because it was all-white. In Ground 8, petitioner contends that his trial counsel was ineffective for failing to obtain written statements from two jurors regarding their reasons for finding petitioner guilty. In Ground 9, petitioner contends that his trial counsel was ineffective for failing to exclude the victim on competence grounds. In Ground 11, petitioner contends that his trial counsel was ineffective for failing to call the initial reporting officer as a witness. Respondent contends that Grounds 2, 5, 6, 7, 8, 9, and 11 are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise Grounds 2, 5, 6, 7, 8, 9, or 11 on appeal from the denial of his amended Rule 29.15 motion. Therefore, Grounds 2, 5, 6, 7, 8, 9, and 11 are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a

fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 2, 5, 6, 7, 8, 9, and 11. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Grounds 2, 5, 6, 7, 8, 9, and 11 is barred.

Grounds 2, 5, 6, 7, 8, 9, and 11 will be denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling

on the constitutional claim(s) "debatable or wrong."  Tennard v. Dretke, 542 U.S. 274, 276 (2004).  Because petitioner has not met this standard, a certificate of appealability will be denied.  See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) a certificate of appealability is **DENIED**.

/s/ Brian C. Wimes
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  November 10, 2015 .